# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| GREGORY L. CRIPE and TAMMY CRIPE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CAUSE NO. 3:12CV829-PPS |
| | ) |
| HENKEL CORPORATION and NATIONAL STARCH & CHEMICAL CO., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants Henkel Corporation and National Starch & Chemical seek summary judgment on Gregory and Tammy Cripes' claims of negligence and strict liability for failure to give adequate instructions and warnings on the use of a toxic adhesive. The defendants, which I will refer to for ease of reference collectively as Henkel, contend that the Cripes have failed, after multiple extensions of discovery granted over the past three years, to properly identify necessary experts on causation. I agree, and because the Cripes' claims cannot be established without expert testimony on causation, I grant Henkel's motion for summary judgment.

**Factual Background**

Gregory Cripe worked in maintenance for Challenger Door LLC and was exposed to toxic adhesive material and fumes from a hot melted adhesive called PUR-FECT LOK® 834A while installing a new ventilation system on his employer's roof. (DE 1 at 1.) The Cripes claim this exposure to toxic adhesive material, specifically methylene

diphenyl diisocyanate (MDI), led to severe personal injuries that required extensive medical and psychological treatment. (DE 54 at 1, 28.) The Cripes are suing National Starch and Henkel, the manufacturer and distributor of PUR-FECT LOK® 834A, for negligence and strict liability for failure to give adequate instructions and warnings on the adhesive material. (DE 1 at 2.)

In the Preliminary Pretrial Conference held on February 20, 2013, it was determined that disclosures pursuant to Fed.R.Civ.P. 26 (a)(1) must be exchanged among the parties by March 20, 2013. (DE 14 at 1.) Reports from retained experts under Fed.R.Civ.P. 26(a)(2) were due from the Cripes by September 1, 2013 and from Henkel by October 15, 2013. (*Id*.) After multiple extensions totaling more than two years, the court ordered that the Cripes' expert witness disclosures and reports be delivered to Henkel by September 1, 2015. (DE 34.)

On that date, the Cripes disclosed the report of their retained expert, Dr. Patricia Robinson. (DE 35.) Her expertise is in the area of the effectiveness of warnings. Attached to Dr. Robinson's report are multiple other reports and records from Mr. Cripe's various doctors, consisting of several hundred pages of his medical records. (*Id*.) These treating physicians, along with numerous other medical providers, were previously disclosed as fact witnesses in the Cripes' Rule 26(a)(1) disclosures (DE 15 at 2.) But they were never specifically disclosed as experts under Rule 26(a)(2), whether as experts who are required to provide a report under Rule 26(a)(2)(B) or as experts who

are not required to provide a report under Rule 26(a)(2)(C). As of May 20, 2016, all discovery in this case was closed. (DE 41, 42.)

## Discussion

Henkel asks me to grant summary judgment in their favor because the Cripes have failed to designate an expert on the issues of general and specific causation. (DE 43 at 2.) As noted above, the Cripes did identify one expert, Patricia Robinson, but her area of expertise is the adequacy of warnings and instructions. Dr. Robinson was the only expert witness specifically identified by the Cripes. (DE 35.)

The Cripes' principal claim is that six of Mr. Cripe's treating physicians (Drs. Kristyl, Pike, Furbee, Tormoehlen, Hussain, and Elliott) are his experts on the issue of causation. The Cripes argue that the reports of these six physicians were adequately disclosed because they were appended to Dr. Robinson's report. (DE 54 at 30-31.) The Cripes further argue that even if not technically correct under Rule 26(a)(2)(C), these materials should be treated as expert disclosures because there is no prejudice or surprise to Henkel. (DE 54 at 32.) Henkel's response is that the Cripes' failure to disclose experts on general and specific causation is neither justified nor harmless, and that the treating physicians that the Cripes now identify as causation experts were not properly disclosed as experts. (DE 57 at 2-3.) As a result, Henkel has not deposed the doctors and does not know the substance of their testimony, and with the case set for trial in February 2017, if they are allowed to be designated as experts at this late stage,

3

Henkel will be flying in the dark. (*Id.* at 3.) Therefore, Henkel requests summary judgment in their favor.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine dispute of material facts exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In toxic tort cases, expert testimony is necessary to establish causation when there is no obvious source of the injury. *Myers v. Illinois Central Railroad Company,* 629 F.3d 639, 643 (7th Cir. 2010). Under Indiana law, which is applicable here, a toxic tort plaintiff must provide evidence of both general and specific causation. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 831 (7th Cir. 2015). The Cripes acknowledge this requirement of their proof. (DE 54 at 43.) So to survive Henkel's motion for summary judgment, the Cripes need to have expert testimony on causation to prove that Mr. Cripe's injuries were caused by PUR-FECT LOK® 834A.

Before getting to the Cripes' principal argument— that his treating doctors can serve as his causation experts—I need to address an initial very weak argument made by the Cripes. They claim that their properly disclosed retained expert, Dr. Patricia Robinson, addresses general causation, *i.e.*, the ability of MDI exposure to cause injuries like those suffered by Mr. Cripe. (DE 54 at 38-39.) What the Cripes actually argue is

4

simply that Dr. Robinson made note of some publications addressing such a causative link. (*Id.*) Henkel argues that Dr. Robinson is not qualified to testify on causation because she is not a medical doctor, toxicologist, epidemiologist, nor an expert in disease causation. (DE 44 at 5.) Indeed, Dr. Robinson herself conceded that point in her deposition testimony. (DE 58-7). Dr. Robinson testified without reservation that she was unqualified to render such a judgment herself. Although she considers those publications to be "reliable literature," she disclaimed any ability to "give an opinion on whether any of the things discussed are or are not caused by diisocyanates." (DE 58 at 7.) Acknowledging that she is not a medical doctor, toxicologist or epidemiologist, Dr. Robinson admitted that she lacks expertise in disease causation. (*Id.* at 6.) Instead, her expert testimony is limited to opinions on the adequacy of the warnings accompanying the PUR-FECT LOK® 834A adhesive on its product label. (DE 35 at 12-13.) So Dr. Robinson does not in fact offer any opinions on general causation relevant to Mr. Cripe's injuries, and readily acknowledged that she is not qualified to do so.

Now it is on to the Cripes' more substantive argument—that the medical records and other documents from the treating physicians appended to Dr. Robinson's expert report qualify as a disclosure of those physicians as experts on causation. A treating doctor is providing expert testimony if she offers opinions based on scientific or technical knowledge. *Musser v. Gentiva Health Services*, 356 F.3d 751, 756 n.2 (7th Cir. 2004). Thus, the opinions of Mr. Cripe's treating doctors on the cause of his injuries qualify as expert testimony. However, the Cripes have failed to comply with the

5

requirements of Rule 26 for formally disclosing these treating physicians as experts on general and specific causation.

Under Fed.R.Civ.P. 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." All Rule 26 expert disclosures should be in writing, signed by counsel, and served on opposing counsel. Fed.R.Civ.P. 26(a)(4); *Musser*, 356 F.3d at 757. In the case of a retained expert, the disclosure is to be "accompanied by a written report—prepared and signed by the witness" under Rule 26(a)(2)(B). Rule 26(a)(2)(C) provides that if the witness is not a retained expert and not required to provide a written report, the party's disclosure of the expert must include a statement of the subject matter on which the witness is expected to present evidence and a summary of the facts on which the witness will rely in testifying.

Disclosure of a treating physician, then, is to be a document prepared and signed *by counsel* providing the information required by Rule 26(a)(2)(C), rather than medical records or any report by the witness. When a party fails to identify a witness in compliance with the requirements of Rule 26, exclusion of the witness is "automatic and mandatory" unless the failure was substantially justified or harmless. *Novak v. Board of Trustees of Southern Illinois University*, 777 F.3d 966, 972 (7th Cir. 2015); Fed.R.Civ.P. 37(c)(1). *See also Hassebrock v. Bernhoft*, 815 F.3d 334, 341 (7th Cir. 2016) ("If a party doesn't make a timely and complete expert-witness disclosure, the expert's testimony ordinarily can't be presented at trial.").

The Cripes have failed to comply with the requirements of Rule 26(a)(2)(C). The Cripes attached voluminous medical records and reports labeled "Exhibit Material Relied on by Expert" to the 26(a)(2)(B) disclosure of retained expert Dr. Robinson, failing to identify any other doctors as expert witnesses. (DE 35-3 to 35-16.) The documents that the Cripes now say are their disclosure of treating doctors as experts are just 5 of 16 attachments to Dr. Robinson's report and they are all labeled the same way. (DE 35-10, DE 35-12, DE 35-14, DE 35-15, DE 35-16.) The electronic filing looks like this:

> DISCLOSURE of Rule 26 Written Expert Report filed by Gregory L Cripe. (Attachments: # 1 Exhibit List of Expert's Cases, # 2 Exhibit CV of Patricia Robinson, Ph.D., # 3 Exhibit Material Relied on by Expert, # 4 Exhibit Material Relied on by Expert, # 5 Exhibit Material Relied on by Expert, # 6 Exhibit Material Relied on By Expert, # 7 Exhibit Material Relied on by Expert, # 8 Exhibit Material Relied on by Expert, # 9 Exhibit Material Relied on by Expert, # 10 Exhibit Medical Record Relied on By Expert, # 11 Exhibit Medical Record Relied on By Expert, # 12 Exhibit Medical Record Relied on by Expert, # 13 Exhibit Medical Record Relied on by Expert, # 14 Exhibit Medical Records Relied on By Expert, # 15 Exhibit Psychological Records Relied on by Expert, # 16 Exhibit Medical Report Relied on by Expert)(Mulvaney, Douglas) (Entered: 09/01/2015) [DE 36.]

Any reasonable person who received such a filing would come to the conclusion that the documents appended to Dr. Robinson's expert report are materials supporting *her* report, not expert reports of someone else. There is no reason to use the nomenclature "Medical Records Relied on" by Dr. Robinson when designating the exhibits attached to her report, unless those records are what they purport to be—medical records relied on by Dr. Robinson. No one would conclude that some (but not all) of the attachments are really some separate Rule 26(a)(2)(C) disclosure of a

7

number of other experts. Certainly, the content of the five attachments Cripe now relies upon would not support such an interpretation.

Attachment #10 [DE 35-10] is a medical report signed by Dr. R. Brent Furbee and Dr. Laura Tormoehlen of the Indiana Poison Center. In the form of a letter addressed to Dr. Kevin Kristl, it is Furbee and Tormoehlen's response to Dr. Kristl's referral of Gregory Cripe to the outpatient toxicology clinic of Methodist Hospital in Indianapolis. The letter outlines the history of Cripe's present illness, a review of his systems, his past medical and surgical history, his medications and allergies, his social and occupational history, the results of Cripe's physical exam at the clinic, the medical history reviewed by the examiners, and finally offers their Impression and Plan. In short, it is a run of the mill medical record, not an expert report.

The same goes for Attachment #12. It is the medical record of Cripe's examination by neurologist Zulfiqar Hussain, again on referral from Dr. Kristal. [DE 35-12.] A non-substantive cover letter from Dr. Hussain is attached to the medical record of Cripe's January 20, 2012 visit. Like the report of Furbee and Tormoehlen, Hussain's record lists Cripe's complaints, his medical and surgical history, his social history, allergies and medications, and the report of Cripe's physical exam. [*Id.* at 2-4.] The record concludes with Hussain's Impression and Suggestions. [*Id.* at 4-5.]

The next supposed expert disclosure is in Attachment #14. It is a 41-page compilation of medical records and reports, consisting largely of the records of Cripe's treatment by neurologist Dr. Kevin Kristl, but including reports of other practitioners'

8

testing and examinations. [DE 35-14.] This attachment includes notes of Cripe's visits to Dr. Kristl on November 2, 2011 [*id*. at 2-5], January 12, 2011 [*id.* at 6-8.], February 4, 2011 [*id*. at 11], March 29, 2011 [*id.* at 12], November 20, 2011 [*id.* at 13-16], and August 27, 2012 [*id*. at 18-20]. Also within this exhibit to Dr. Robinson's report are Dr. Kristl's letter of March 21, 2012 concerning Cripe's work limits [*id.* at 17], a report of an EEG of January 27, 2011 [*id.* at 9], and off-work Rx dated January 27, 2011 [*id.* at 10]. Other pages of the 41 are a Report of Pulmonary Function Testing, ordered by Dr. Stephen Wintermeyer and interpreted by Dr. Homer Twigg, III [*id.* at 21-27], a report of neurological screening [*id.* at 28-30], a Functional Capacity Evaluation Report by Ruth Noeldner, OTR [*id. at* 31-35], an Independent Medical Examination (Worker's Comp Evaluation) Report of Dr. James D. Pike [*id.* at 36-40], and a letter of Gary Elliott, Ph.D., Clinical Neuropsychologist, to Toni Schneider, Claimant Examiner, Indiana Accident Fund, dated January 31, 2014 [*id*. at 41].

The Cripes claim that Attachment #15 constituted the necessary disclosure of expert testimony by clinical neuropsychologist Gary Elliott. [DE 35-15.] But once again, Attachment #15 is simply a collection of medical records bearing none of the markers of an expert disclosure. The 19-page exhibit consists of Elliott's cover letter to referring physician Kevin Kristl, reports of psychological evaluations of Mr. Cripe that occurred on March 14, 2011, August 3, 2011, and December 28, 2013, and Dr. Elliott's March 27, 2014 letter to a claimant examiner at the Indiana Accident Fund. Finally, Attachment #16 [DE 35-16], now proffered as the expert disclosure of Dr. James Pike, is the same 5-

9

page letter-report of Pike's Independent Medical Examination of Mr. Cripe dated March 9, 2013 as was incorporated in Attachment #14, described above. Again, these are nothing more than ordinary medical records that don't resemble expert disclosure as called for by Rule 26(a)(2) in the least.

This conglomeration of medical information clearly does not constitute plaintiff's counsel's statement of the subject matter on which a particular witness is expected to present evidence, nor counsel's summary of facts and opinions as to which any particular expert witness is expected to testify. Not one of these five attachments to Dr. Robinson's report was prepared or signed by counsel, none of them was offered as a stand-alone expert witness disclosure, and none would satisfy the requirements of Rule 26(a)(2)(C). The disclosure of these doctors earlier in a long list of medical *fact* witnesses is not adequate to constitute the formal designation of expert witnesses that the Federal Rules of Civil Procedure demand. *Musser,* 356 F.3d at 757.

The court has broad discretion when determining if a failure to comply with disclosure rules is harmless or justified. *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003). Because the Cripes persist in contending that they complied with Rule 26(a)(2)(C), they offer no justification. (DE 54 at 32.) A misunderstanding of the law does not provide substantial justification for a disclosure violation. *Tribble v. Evangelides,* 670 F.3d 753, 760 (7th Cir. 2012). Therefore, the fact that the Cripes did not understand they were not complying with Rule 26 does not justify their failure. Also, in this toxic tort context, the Cripes should have known that causation expert testimony is

crucial to their case, which weighs against any justification for failing to disclose the experts appropriately. *Musser,* 356 F.3d at 759, quoting *Dura Automotive Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 616 (7th Cir. 2002) ("Given the necessity for expert testimony in medical malpractice cases under Indiana law…the Mussers should have known that expert testimony was 'crucial' to their case, and 'likely to be contested;' in these circumstances there is not a substantial justification for failing to disclose experts."). The Cripes' failure to comply with Rule 26(a)(2) was not substantially justified.

Neither was it harmless. There are four factors that courts take into consideration when considering if the failure to abide by the expert disclosure rules is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Westefer v. Snyder,* 422 F.3d 570, 584 n.21 (7th Cir. 2005) (citing *David,* 324 F.3d at 857). Although there is no bad faith shown here, the belated identification of these particular treating physicians as causation experts is a surprise and is prejudicial because defendants have not deposed these witnesses as they surely would have if their status as experts had been known.

The ability to cure this prejudice, given the February 2017 trial date, lies not with the defendants but with the court, which makes for a likelihood of disruption of the trial date if this motion is denied and the witnesses are permitted to be used as experts. If I

11

were to deny this summary judgment motion, the trial could be rescheduled to a later date, which would allow more time for depositions and new motions. However, it is not an abuse of discretion to conclude, as I do, that the additional costs to defendants of reopening discovery, preparing new summary judgment motions, and further delaying the trial are not harmless, particularly given the age of this case and the prolonged period of discovery already allowed. *Hassebrock*, 815 F.3d at 341 ("Reopening discovery would prejudice the defendants" because it "would cause further delay and require the defendants to prepare new motions on potentially different grounds."); *Musser*, 356 F.3d at 759.

**CONCLUSION**

I find that the Cripes failed to identify Doctors Kristyl, Pike, Furbee, Tormoehlen, Hussain, and Elliott as expert witnesses in compliance with Rule 26(a)(2), and that the failure was neither substantially justified nor harmless. As a result, under Rule 37(c)(1), the Cripes are unable to use these witnesses as experts on the causation of Gregory's injuries. Without these witnesses, the Cripes lack evidence of causation necessary to support their tort claims. Defendants are entitled to summary judgment because the Cripes have "failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof." *Celotex*, 477 U.S. at 323. The motion for summary judgment will be granted.

**ACCORDINGLY:**

The Motion for Summary Judgment (DE 43) of defendants Henkel Corporation and National Starch & Chemical Co. is **GRANTED.** The Clerk shall enter judgment accordingly.

**SO ORDERED.**

**ENTERED** this 5th day of January, 2017.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT